Good morning, Your Honors. May it please the Court, my name is Brent Blakely. I represent the appellant Phil Brown. Today I'm going to spend my time focusing on the issues central to the fourth and fifth causes of action in the anti-SLAPP motion, the right of publicity claims, whether or not the First Amendment bars such claims, and then I'm going to pass my remaining time on to my co-counsel, Mr. Burroughs, to talk about the copyright issues. As Judge Wardlaw recognized in the Charles v. City of Los Angeles case, it's well established that truthful promotion of an expressive work is protected by the First Amendment. Likely aware of this Court's ruling in Sheriff v. Forum, Perry has attempted to couch his claim as a false representation that he was somehow going to be in this new band, Apaches from Paris. There are several problems with that argument. The first, that it is misleading. You just need to look at the complaint itself to realize that this is an attack on Mr. Brown's not only the underlying expression, the ability to use the songs, which are clearly an expressive work, but his promotion of those songs. You need to look no further than the Prayer of Relief, where he seeks an injunction, unlimited, any use of Perry's name or likeness in connection with Brown or his musical services, and in addition to that, to prevent Brown from distributing, releasing, or otherwise using the songs that he co-authored with Mr. Perry. But the two of them had an agreement to begin with, right? Pardon me, Your Honor? The two of them had an agreement to begin with. They had an agreement, well, they co-authored the, and again, this is something Mr. Burroughs is going to direct, you know, discuss directly, but they had an agreement to basically do these songs together, yes, Your Honor. And then they both had to agree when they could be released and all of that, right? No, as co-authors, and again, this is something Mr. Burroughs will address directly. Okay, I'm sorry. But as a co-author, yes, he had the right to do that. Okay. And this relief that's in the injunction is exactly what Perry got when he went to the court and got an ex parte Tiro, emergency Tiro without notice on November of 2018, preventing my client from distributing those works that he co-authored with Mr. Perry and also using Mr. Perry's name or likeness in a First Amendment-protected manner to promote those expressive works. And that's a Tiro that still remains in place today. Well, it remains in place in part because she stipulated to. Yeah, haven't you stipulated? No, I stipulated. Here's what happened. I stipulated to have it moved to, I did not. Judge set a hearing date. Judge set a hearing date and said. We stipulated to a new hearing date. And the judge set a hearing date and he said, I'm willing to have the preliminary injunction hearing. Maybe I goofed so far by not having it. I'm ready to have it. And the parties went to him and said, no, no, you can continue it. No, no, no. What happened was in the beginning of the case, he said an OSC raided this hearing. It kept on bumping. It kept on moving because Brown had never been served. Okay, so forget all the history up until the last continuous. So what happened in the last continuous? So we had a hearing date and I filed an opposition. I stipulated to that date. Okay. And we had a, we filed an opposition to the motion for, you know, for a preliminary injunction. And instead of ruling on it, the court said, I'm just going to continue it to the trial date. I did not stipulate to that. And wasn't there a separate stipulation that we weren't going to have a hearing pending the appeal? Yeah, you agreed to the state pending appeal. Yeah. I was very careful about that because I've dealt with these issues. Okay. But because basically, did you agree to a stay of the trial? In other words, the trial court, once you agreed to a stay pending appeal of the underlying action, the trial court couldn't conduct a hearing, could it? He had already moved it. I understand that history. I understand that history. Already moved it. I understand the history. But once you, isn't it true that the trial court today couldn't conduct a hearing? The trial court, as he had the discretion to do, we're, we showed up to the pre-trial conference. We were like. Try to answer my question. Try to answer my question. The answer is, Your Honor, I did not stipulate to move that thing beyond the preliminary injunction. I understand your position. I'm asking you a very different question. I think you can answer it. And I do not think that. The trial court, could the trial court. Let me finish the question. Will you answer it? Because it may be a different question than the one you're answering. Could the trial court today conduct a preliminary injunction hearing? He could lift the stay. Who has jurisdiction right now, counsel, us or him? You have jurisdictions over the issues contained in the anti-SLAP motion. And you agreed to a stay pending the appeal. Yes, Your Honor. But I don't think that was retroactive on his ruling to move that. He should have ruled on the preliminary injunction at that time. To the extent he didn't, it was at least, in part, your responsibility. No, not that. Because the stay was several months later when we were getting, when we were basically on the doorstep of trial. No, I mean. I love the duplicity of IP lawyers all over the world, okay. Maybe you should just move on to the next issue. I don't know. Unless you, unless my colleagues have some questions. And again, I'm focusing, what I wanted to focus on was this First Amendment issue regarding the anti-SLAP, which is clearly before this Court. So let's see if we can, so let's see if we can separate sort of the legal boundaries and tell me where you fall. If there's, if somebody believes that somebody else has defamed them, that, bring a case that'd say there's defamation, is there any evidence here of defamation? Because the anti-SLAP motion would only be good if, and defamation falls outside the First Amendment, you agree? Defamation falls outside of the First Amendment? Sure. If there, you can, you can't, you can't. Yeah, opinion and, yeah, of course not. Sure, there are types of defamation that are not protected by the First Amendment, correct? Correct, Your Honor. Okay. So they allege defamation, don't they? In this hypothetical? No, but. Well, they allege derogatory publicity. Yeah, okay. So isn't derogatory publicity something that's not covered, that's not completely immunized by the First Amendment? Correct, Your Honor. So why wasn't there, recognizing that we're on an anti-SLAP motion, we're not on a motion for summary judgment or a trial, why wasn't there a minimum level of legal sufficiency and tribality? I have no idea what that means, but it's the language. Well, Your Honor, I mean. We used before. And that's, that's part of my argument with regard to why the First Amendment, that, you know, on. You may be entitled to First Amendment protection at the end of the day. That's not the question. The question is, why didn't they raise at least, because we're on an anti-SLAP motion, why didn't they raise at least enough to make it not frivolous, their claims not frivolous? Well, first thing, the, it's very clear. And again, you look at it as akin to a summary judgment standard. It is very clear from the complaint, from the relief they sought, and from the least relief they obtained from the court, that they are attacking First Amendment protected expression. In other words, the truthful promotion in connection with an expressive work. You see, but we're dealing, that's my problem. How do we know it was truthful? Well, what he's saying is, well, you just look at the, well, that's. Because we're, we're at the anti, we're at the anti-SLAP stage. How do we know it was truthful? That's assuming, that's assuming that this is their evidence. The Facebook post and the tweets from Brenda Bann, my client's girlfriend. And let's assume that you're, that you're, that you're, that you're stuck with your, the girlfriend's tweets for the moment. Because they presented some evidence of, of an apparent partnership. They presented no evidence of a partnership, Your Honor. No admissible evidence of a partnership. Didn't Bann repeatedly, I'm looking at the record, ER 98. Bann repeatedly said she was acting on Brown's behalf in her correspondence with Perry. Perfect 10 case, Your Honor. She has to be his business partner. She has to be able to make decisions on his behalf. I'm married, but my wife can't go and write, you know, go make decisions on behalf of my law firm. Again, going back to the standard, a minimum level of legal sufficiency. You may defeat that claim. There's, there's none. Later on. They, they did not meet the perfect 10 standard. These tweets are hearsay. Ms. Bann has never authenticated these tweets. And, and plus. Didn't, didn't Ms. DeConte, I think that's her name. Ms. DeConte. Attest that Bann was Brown's manager. She said on information and belief. And just because calling someone Ms. DeConte, labeling Ms. Bann as a manager doesn't make it so. And doesn't satisfy the requirements under perfect 10 to have vicarious liability in this situation. See, and I guess you understand my problem. My problem is that if this were a summary judgment or a jury trial, I could look at all that stuff. But here, the question is, is the complaint so violative of First Amendment rights that it deserves an anti-SLAPP sanction? Well, it's not just, it's not just the complaint, Your Honor. This is, this is akin to a summary judgment motion. They have to come up with. Fine, you want to dismiss, you want us to dismiss. Well, let's narrow it to what we're, you, you want us to dismiss the cause of action for a violation of the California right of publicity under the Anti-SLAPP Act. Because you're contending it's really a direct interference with your First Amendment rights. Correct, Your Honor. Now, your First Amendment rights derived from the fact that you contend that you are joint owners of the works in question. Your Honor, it, and it's, it's, it's not hinging upon that. It is, it is undisputed that these songs are expressive works. And Perry doesn't challenge that context. So it doesn't challenge that. Right, but he's alleging that you're using his name and identity to promote. An expressive work. Your work. An expressive work. Well, right, but it's your work. You're contending it's your work. I mean, he's, he's, how else could he promote songs that he did with Steve Perry without letting people know that Steve Perry is, is on those songs, on those performances? Is that a, is that proven in this case? I mean, isn't, aren't there a lot of, it's not undisputed. I think whether or not there's joint ownership of the rights to exploit this work is disputed, right? That's disputed, but it's undisputed that the songs themselves are expressive works, therefore, therefore entitled. But the sound recordings, the sound recordings were jointly created, right? Their performances, yes. And. And his vocals are part of it. And that's what you, your, your client wants to use now. That, that's something, again, Mr. Berosa can talk about it. Yes, but, but my point is. I don't know how you can split this up, by the way, to be there all about the same issue. I spent a lot of time thinking about this very issue, Your Honor, that you're raising. And again, as far as the test under, you know, Google, I can't pronounce the name, but Daily and Share, as long as you have a fully protected expressive work, any promotion, truthful promotion in connection with that work is privileged or protected by the First Amendment. But it doesn't include, the right to exploit the work to the extent you have it, doesn't include the right to exploit Perry's identity. And his, his, the things that attach as part of his own personal identity to, to use his identity, in other words, to give credit or promote the particular work that you're, derivative work, to be honest. This isn't now what you're trying to, your client's trying to promote. It's a derivative work of the original work. The, the songs that he, that they did, and it's not a derivative work. They perform these songs to you. They created these songs. But what he's, what he's packaged now with his new band and in his new, new songs is definitely derivative of the recording. And that was, that was the other point that I was going to get to, is that there, you know, first thing under Scher and under the, the cases talking about it, there has to be knowingly clear, explicit misleading statement for First Amendment not to apply in this situation. And all the tests that look like that, like the Scher case, she did a, a interview with us. And then the, somehow forum got the rights to it and then posted the interview and said, hey, Scher gave us the interview that it would only give the forum. They made a knowingly clear, misleading, untruthful statement. And in Scher, the court held that it did not apply. In this case, my client said Phil Brown and Steve Perry composed and recorded in 1990 and then posted a snippet of the song. There is nothing untruthful about that. See, is the only appealable order in this case, the denial of the anti-SLAPP motion? No, the TRO is also a play, Your Honor. Is it, is it appealable? It's, it's appealable when the court continued it out. Well, no, we can consider it as, as, as supplemental or bound up in this one. But if you'd not appealed the anti-SLAPP, see what troubles me about this case, if you hadn't appealed the denial of the anti-SLAPP motion, you would have already had a preliminary injunction hearing and we would have had a record in this case. And that's why I, I, I hate the appeals of anti-SLAPP motions. They're just, they're, they're a complete distraction. You would have been able to try the issues in front of the judge. The judge would have made findings and we would have been here. And it's not your fault because our court has foolishly allowed these, these to become appealable, probably correctly had to allow them. But that's, that's what, that's what drives me sort of nuts about the case. We, we don't have a summary judgment record. We don't have a hearing because you've chosen to come up on this side issue. And now we're fighting, now we're fighting about what the judge should have or would have done had you not come up here. Well, Your Honor, I think, I think that issue is central to our rights in this case. No, it's not. You would win. If you're completely correct, you would win. Right. You would, you'd be done. It's this, it's this side looking for sanctions under the anti-SLAPP motion that, that, that has us, because if the anti-SLAPP motion hadn't been appealed, the preliminary injunction hearing would have been held. And your co-counsel could have made all of his arguments about the copyright. But instead, we're here because you want us to be here dealing with the anti-SLAPP motion. Your Honor, from, I mean, you're entitled, you're entitled, that's my frustration. I know. And I've, and I've been up on SLAPP on so many different cases, a lot before this court. But I think one thing I do need to, to address Judge Wardlaw's concerns, you know, there are two things here. First, there's an attack on speech that is clearly truthful, that they performed a song together, that they, you know, and here's a copy of the song. Now, this, this whole thing about saying that he is in the patches of Mars, that, that's over in this bucket, because it is very clear that they are attacking First Amendment protected rights, the ability to promote his name and image in connection with. Yeah, I, you're over your time. Do you really, do you want your co-counsel to address the copyright issues? Yes, yes, Your Honor. So, what did we give him, five minutes? Thank you, Your Honors. Thank you. Good morning, Your Honors, and may it please the court. Scott Burroughs for the appellant. I want to start briefly by addressing Judge Battalion's question regarding joint authorship of a copyrighted work, because it is somewhat counterintuitive. If two authors create a work together, both of those authors have the right to independently exploit the work. But not if they've, not unless they've contracted otherwise. Yes, Your Honor, but they're dealing. Didn't they, in this case, have a contract between the two of them, or an understanding between the two of them, what they were going to do? The only contract that's in the record, Your Honor. Musicians, for God's sakes, okay? Talk to me about it. So, tell me what the contract is. The contract actually reflects our position of joint authorship, because it states expressly that they co-authored the works. Right, but doesn't it limit on how they can publish it? No, it does not. It indicates that there's an administration right that exists independent of the exclusive 106 rights under the Copyright Act. And the administration right rests with? It rests with Mr. Perry. Perry, very good. And that has, and that's very common. If I was to write a song, I would potentially provide my administration rights to BMI or ASCAP or a PRO to administer. So then, if you went out and published it against their wishes, they'd sue you? They wouldn't, because I retain ownership. What an administration agreement is, it does not divest the author of copyright. That's what's so important here. That's right, but you gave, Brown gave Perry the exclusive worldwide right, which means it, his rights, it's giving away his exclusive rights to someone else. To administer. And he'll get compensation to the extent that there's any profits that derive from this work. That's 100% correct, Your Honor, and it's not germane. So you can't both give away exclusive rights and retain those rights. You're either giving them exclusively away or you're retaining them, but you can't do both. I have two responses to that, Your Honor. The first is that the agreement we're talking about expired a long time ago. The second is that even... That sounds like another defense in this action. Well, to the extent that they're raising the issue that they had the right to administer, that right expired well before my client or someone related to my client or associated with my client went online and indicated they are going to exploit the works. But what's even more important is that the administration right... Actually, this right says you agree that I or my designee shall have the exclusive worldwide right in perpetuity. So how did it expire? If you look further down in the agreement, there's a provision that indicates that if it's not included in a work by a certain period of time, the rights will revert to our client. So let me ask you a procedural question. This is what troubles me, and maybe I unloaded on your co-counsel unnecessarily. Your complaint on the copyright side of this is that the judge shouldn't have entered a TRO. That's correct, Your Honor. Okay. If we say to the judge, go back and hold that damn preliminary injunction hearing, you can make all these arguments to him. You're absolutely correct, Your Honor. And I don't think anybody doubts the judge has to hold a preliminary injunction hearing. I would hope so. The posture of this case is a bizarre one. Yeah. So put aside whether or not it's been continued or not continued. It's clear the judge at some point has to hold a hearing at which you can make your arguments about copyright. And if you're right and convince him, he will. Because the only damage from the copyright side has been the injunction. Well, it does. It is germane also to the publicity in the land. Yeah, but you're the copyright lawyer. So let him make the other arguments. From the copyright side, the only problem is you've got a TRO that's been continued in existence. That's one of the problems. But also in connection with the anti-SLAPP, the issue of joint authorship was raised. And to the extent that my client establishes, which we believe he can... Okay, but you get a chance to... See, my point is, if we just get this thing back in front of the trial judge, from your perspective, the copyright perspective, you can make all the arguments you were just making to Judge Wardlaw. And the judge will either say, I buy them or I don't, and enter findings of fact and conclusions of law. And they'll be appealable, and we can look at them. And that's... So I'm having some trouble figuring out why we ought to be worrying about the merits of the copyright claim when everybody agrees there ought to be a preliminary injunction hearing. Only because they are germane to whether or not the statements being made, the challenge statements, are accurate, are inaccurate, or somehow outside the realm of the First Amendment. Which takes me back to Judge Wardlaw's point on the administration agreement. The administration agreement does not divest the copyright owner of any rights. While it may allow them to collect revenues and royalties... Right, I understand that. Okay. So our client owns the copyright... Whatever rights there are. I mean, that's yet to be determined here. Well, it's yet to be determined, and it most likely can't be determined because... And what rights, what work your client actually had rights to. And that's the question that I wanted to address that you brought up with my colleague, on whether or not it's a derivative work, or what type of work this song is. I mean, the original recordings or sound recordings, there's a copyright that arises as to those. The moment they're fixed, that's correct, you're right. Right. And so this work now is obviously a work derivative of this original sound recording. And that's where I'd push back, because it isn't. What is it? What is it exactly? It's a song. It's a song sung by whom? It's a song... Written by whom? It's a song written and performed by Perry and Brown. Which includes... It's not just that, is it? It is. That's where I wanted to clarify the record in that regard. The way this song was made was these two people got together and collaborated on a composition, which they wrote, and a sound recording, an audio track that was a recording of the composition. In doing so, our client wrote the song, performed on the song, recorded the song, which is important under Garcia v. Google in those cases, and then produced the song, after which he maintained the masters of the song. So all indicia, under Your Honor's own opinion in Richland v. MGM, is that our client is the owner of the song. And to the extent that he's making statements, or people are making statements, potentially on his behalf online, about his ownership of the song or his right to release the song... Most, he's a joint owner of the song. If he's... And this goes to Judge Battalion's question. If he's the joint owner, he can do whatever he wants. If there's two owners of one work, both owners can do whatever they want with the song, so long as they account to one another. It is counterintuitive. No, it's not. I think that's the first principle of law you've said that I agree with. Understood, Your Honor. But to the extent that Your Honor had couched it, or termed it as a derivative work earlier, that's not the case. This is the... Well, then maybe I don't have a complete understanding of the exact nature of this work. Did it come out? I mean, was it released? Or was its release in joint? Or were just the statements in joint? I mean, that's why I share Judge Hertz's registration in that. As to the record, yes, Your Honor, the song was not released. When our client sought to release it, the plaintiff went to court and sought the order in joining him from doing so. That's one of the reasons why we're here. What are the terms of the contract? And that was what was supposed to be litigated in the TRO? But the terms of the contract said nothing about who owns what. I know, but that's the dispute. Correct, correct. But to the extent that the elements that we're looking at to establish whether or not there is joint authorship indicate that our client's a joint author, then the statements that are in dispute as published online... You can't make that finding on a dismissal, well, denial of a motion to dismiss under SLAP. Well, you can for another reason, Your Honor. And that's that the claim is stale. The dispute in this case arose in 2002. And as we know... You're asking us to find, as a matter of first impression, a whole bunch of things that the district court didn't find, but would have been required to find had you only allowed the preliminary injunction hearing. I mean, you may be entirely right about all your copyright arguments, but you're asking us to be the trial court. But the date on which the dispute arose is not in dispute. The plaintiff, Mr. Perry, actually argued in both the preliminary injunction papers and in his opposition to our anti-SLAP that this dispute arose in 2002 and that the statute of limitations for copyright acts that were the gravam in his ownership is three years. It's more than a decade after this arose. So we can dismiss a case sua sponte on statute of limitations when the district court has never been given the opportunity to consider that issue? Here, where it's evident from the... Yes? Yes? Only when it's evident from the papers and the record. Only in your case. All right. You're well over your time. And I think we need to hear from the other side. And this argument is going way over its time and what it's warranted. But let's hear from the other side. Good afternoon, Your Honor. Yeah. Mark Lee Perry on behalf of Stephen Perry, who is here today. I'd just like to address a couple of points. And then I'm happy, of course, to answer any questions you may have. First, with regard to the anti-SLAP motion and the statements that were made, from my perspective, they were commercial speech. They were instances in which Mr. Brown used Steve Perry's name and likeness to promote not only the four sound recordings that are in dispute, but also a CD that Mr. Brown was releasing with Mr. Brown's band called Apaches from Paris. So how did he use his name? Well, in one instance... Like this. I'm trying to look at the exhibits and I'm not sure I can sort that out. Yeah. I'm sorry to say I don't have the excerpt of record reference for you, Your Honor. Just tell me what he did. Yes. But in one instance, there was a picture of Mr. Brown, a picture of Mr. Perry, and there was a headline... I'm forgetting Mr. Brown's first name. I'm Phil Brown of Little Feet. Steve Perry of Journey. Coming soon. There was another one in which I must admit I don't recall a precise language, but effectively it implied that Mr. Perry was part of Apaches from Paris, Mr. Brown's band, which of course he is not and never has been. Now, of course, my client has no problem with Mr. Brown promoting his band and going forward, but he does have a problem when you use Mr. Perry's name and likeness to promote this other band and to promote Mr. Brown. Now, if they had, hypothetically, had some sort of an ad which was only talking about the sound recordings that are in dispute, I suppose we could have a discussion about whether there's some sort of a First Amendment issue, but that's not what happened. Here we have classic commercial speech, just like any other ad, any other promotion for anybody else's work. Only it's done on Twitter. Yes, done on Twitter and done on Mr. Brown's own Facebook page, in which Mr. Brown, among other things, included a sound clip. So the First Amendment doesn't apply here any more than it does in the context of any other ads, and therefore, there's really no basis for a First Amendment defense or an anti-SLAPP motion. Can you, and I tried to ask this before, can you sort of take me through the history of the TRO? What I find is the judge, and tell me where I'm wrong, the judge issues a TRO on November 15th of 2018? Yes. And obviously, TROs shouldn't last more than a certain amount of time. And then there's an extension of the TRO in March of 2019. Eventually, it got to that point. Right. So how does the TRO remain alive from whenever it should have expired until March of 2019? I'm happy to try to answer that. After the initial 10-day or 14-day period. Whatever it is. Whatever it is. Because everybody agrees it expired. We were not able to serve Mr. Brown, and in fact, had evidence that he was avoiding service. So we went back, ex parte, and asked for an extension of time to try to further our service efforts. As we continued there, eventually, Mr. Brown's counsel called me up. We had a discussion. We worked something out. And we filed something with the court. So in effect, because the TRO was never served on Mr. Brown? Well, we... Was it in effect until March? Yes, sir. Because the standard for TROs, our person is either served with it or has knowledge of it. Certainly, his counsel knew of it, had been served with everything. Okay. So why does, how does the court then get the ability in March to extend it without a hearing? Yes. We had, I had a discussion with Mr. Brown's counsel. He asked for some more time to prepare opposition papers. I had no objection. We worked out a stipulation so he could do that. We submitted it to the court. And the court on its own did, set a different date, extended it out further, eventually to the March hearing date. Okay. But did the stipulation that was submitted to the court stipulate to the continuance of the TRO pending the hearing date? Yes, sir. That's the one I was looking at earlier. Now we get a continued hearing date that was stipulated to by the parties. That's right. And why doesn't that hearing occur? Well, as the, before the hearing was set, counsel filed the slap motion and a motion to dismiss on jurisdictional grounds. All motions were set to be heard that day. And on that day, the court, oh, actually, I don't know if it ruled that day or shortly thereafter, but Judge Walter issued an order denying the slap motions and the motion to dismiss. It, at the same time, issued an order saying, I'm just going to continue the TRO and set an accelerated trial date for this coming June. That is to say, June of 2019. So how does he get the ability to continue the TRO? See, that's the thing. He can't really do that. Thank you. How does he get the ability to continue the TRO? Just because he set a trial date? Yes. He set an accelerated trial date because I'm sure you appreciate it. Yeah. But still, it's, we're now, way beyond the 14 days. It's no longer being continued by stipulation. How does he get the ability to do that? My own, for what it's worth, the court didn't explain it. My own view is, he effectively issued a preliminary injunction. He certainly issued a very detailed decision. Well, if he issued a preliminary injunction, then all my fetching at these guys goes away. We ought to be, he should have made findings of fact and conclusions of law. We should be here reviewing them. I'm sorry, I didn't mean to interrupt, Your Honor. But I actually think, if you read his decision, he does make factual findings. Which decision? His ruling of May 13, 2019. I believe it starts at excerpt of record two. But it's also, I'm holding the Westlaw version. At 2019 Westlaw, 145. This is his denial of motions to dismiss and strike. That's right. And you should note that a number of objections were made, as can be made in these flat motions, to the evidence that was submitted. And footnote one of this decision, he said, well, I've considered those objections. And if I've included the evidence in the order, then I've overruled the objections. If I didn't consider the evidence, haven't articulated it, then I granted the objection. Yeah, but show me where. Wait, are you referring to the March 13, 2019 order? Yes, ma'am. Okay, show me where. Where's the part of it that continues the TRO? Oh, I'm sorry. I think that may be ER1. Let me. Yeah, that's why I can't find it. He issued it the same day. But I think that may be the first page. Hereby consolidates the hearing on the order to show cause. And accordingly, the hearing is continued. But in the temporary restraining order, it shall remain in effect in full force. How does he get the power? There's no findings of fact for SIN to rule 65. Not attached to the document. You're absolutely right. Then if you flip to page two, you'll see the same day at the same time. But those are findings that deal with. The slap motion. Slap motion and personal jurisdiction. How does the judge get the power without the party's agreement to continue the TRO pending the, an expedited hearing of probate injunction to be sure? I thought you could only continue it for the reasons in the rule. And the reason that I want to get, I'll get to it later. Isn't a good reason in the rule, is it? Well, the way, as I stated before your honor, I personally viewed this as effectively an issuance of a preliminary injunction. If it is, he didn't comply with rule 65 or rules 52. So if that is what this is, it was an error. I won't seek to characterize the judge's decision, your honor. But I do think the court certainly had discretion to do what it did. Well, did it? Well, did it have discretion? See, it surely isn't an issue if it's a preliminary injunction because the court says I'm continuing the hearing on the preliminary injunction until sometime later. And setting the hearing is perfectly okay. But then he says, and it's two months, he's saying I'm continuing this TRO for two months pending the hearing on the preliminary injunction without any consent or any of the kind of findings that the rule would require to continue a TRO. Certainly. And if there hadn't been the slap motion and the consideration the court gave, I think that would be a very serious issue. The fact is, though, kind of perversely, slap motions have different evidentiary standards. It's actually easier to get a preliminary injunction because the court has discretion to consider otherwise inadmissible evidence due to the urgency of the need for relief. And I'm happy to give you some case law on that if you'd like. Where's the order staying this case pending the appeal of the slap motion? Yes, Your Honor. Where is it? Oh, where is it? I'm sorry. That was entered in June of 2019. And was it by stipulation or who asked for the stay? Defendants asked for the stay. We were at a pretrial conference before Judge Walter, a couple of weeks before trial. And there was a discussion during the course of the pretrial conference about whether the matter should be stayed pending appeal of the slap motion and of the TRO. I guess I'd have to say I can't say it was stipulated. I ask that it not be continued and that we go to trial. But the court, after discussion with the parties, proceeded to rule with it. So the defendants sought to stay pending appeal? Yes, sir. And I'm just, I can't find the joint, maybe the judge's order is not in the ER. It might not. And we can find it in the court, in the trial court record. It would absolutely be in the court's docket. So we all, don't we all agree that there has to be a preliminary injunction hearing in this case? Well, Your Honor, we certainly have always requested one. Well, so how do we, how do we get it back in front of the trial judge ASAP to do so? Well, I think we have to, we have to say that the TRO can't, it's that he, he abuses discretion by extending the TRO beyond the time stipulated by the parties and that for a preliminary injunction to remain in effect, there has to be a proper procedural hearing. In accordance with the rules. Well, I would not be opposed to that, Your Honor, so long as the TRO remains in effect until such time as we have such a hearing. The one thing we do not want is for there to be a window in which the defendant can't exploit the work. We've worked very hard to try to do what we can. We could actually say what should be done without actually vacating the TRO. Yes, so long as the TRO remains in effect, I would have no objection to such a decision. Should we vacate the stay and, and then go, we can move on to the slap motion separately? Is anyone asking for the stay to be vacated? Yeah. Well, I know, I know, but you know you are, you'd like to have a preliminary, you want a preliminary injunction hearing. You oppose the stay. You oppose the stay. I have to say, I think the trial court would certainly benefit from the clarity of this court's guidance on the slap issues. It would benefit if our guidance were clear. And I'm sure it would be. But that's, that would certainly be helpful. Going back without that guidance, I have concerns. But I guess I, the question I'm asking is a little bit different. Oh, I'm sorry. You have, you, you agree, you don't oppose a very expeditious preliminary injunction hearing. No. What you oppose is having the TRO vacated pending that very expeditious hearing. Yes, sir. Now, I have two minutes. I'd reserve time unless your honors have any questions. They're not, they all get to speak, but you don't get to speak again. So you have any points to raise? Yes. Just a couple of substantive things since they've raised it. First, the one point I didn't address was, are these joint works based on the evidence presented? The answer, it seems to me, is clearly no. Most importantly, in this case, because Mr. Perry never intended there to be joint authorship for a variety of reasons, and under ethical law, the al-Muhammad case and your honors' decision, that's very important. Control is not such a factor here, but it is disputed. Mr. Perry testified that he did the sound recordings of his vocal performances. Mr. Brown claims that, no, he did it. So there's a factual dispute. That's up for a finder of facts. You can't decide that on a slap motion. There's a factual dispute. And the third factor is, well, what is the basis of the commercial appeal of the work? Well, the basis of the commercial appeal is it has Steve Perry's recorded vocal performances. So certainly, Mr. Brown— Mr. Brown would say the same thing. Well, I guess he could, but I would invite Mr. Brown to release those sound recordings with his vocal performances and see how well they do. So you're not disputing that Brown has a right to the compositions and maybe the arrangement, but if he wants to release it, he has to do it himself. Yeah. Not with Mr. Perry. Yeah, almost. There are four songs at issue. Mr. Brown wrote two of the songs himself. He owns music composition rights. That's it. The other two, Mr. Perry and Mr. Brown wrote together. Those are the two musical compositions that are the subject of the administration agreement you were talking about. Here, we're talking about a completely separate set of copyrights in the sound recordings. And Mr. Perry never intended those sound recordings to be joint works. In fact, he had a record deal with CBS Records that would have prohibited him from entering into such an agreement. And as Your Honor correctly noted, in the Richland case, there's not an agreement of both parties, but you got to have both parties agreeing that it's a joint work. Well, he clearly didn't intend it to be a joint work. And if they both didn't intend it to be a joint work, it isn't a joint work. And that's one of the reasons I think this needs to go back is because it's, I'm not even clear which works we're talking about at each, when everybody talks about these works, these works, these works. And I'm not even clear what the new work is. It's about to be released. So I think that this is a lot of issues of fact that have to be hammered out. So with that, you're over your time too. And it's late in the day. And so we will submit Perry versus Brown. And this session of the court is adjourned for today. Thank you.
judges: Wardlaw, Hurwitz, Bataillon